UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREI SAVCHUK,<br><br>    Plaintiff,<br><br>v.<br><br>UR M. JADDOU, et al.,<br><br>    Defendants. | Case No. 2:24-cv-03408-WLH-BFM<br><br>**ORDER RE MOTION FOR SUMMARY JUDGMENT [37]** |

      Before the Court are Defendants' and Plaintiff's Joint Motion for Summary Judgment (the "Joint Motion"), with Defendants as movants and Plaintiff as cross-movant. (Mot. for Sum. J. ("Mot."), Docket No. 37). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for May 16, 2025, is **VACATED**, and the matter taken off calendar. For the reasons explained herein, the Court **ORDERS** the case dismissed with prejudice for lack of subject matter jurisdiction and, accordingly, **DENIES** the Joint Motion as moot.

I. BACKGROUND

A. <u>Factual Background</u>

Plaintiff Andrei Savchuk ("Plaintiff") brings the present action against Defendants Ur M. Jaddou as Director of U.S. Citizenship and Immigration Services ("Defendant Jaddou") and U.S. Citizenship and Immigration Services' ("USCIS") Los Angeles Asylum Office ("Defendant USCIS") (collectively, "Defendants"). (Compl., Docket No. 1). Plaintiff seeks to compel Defendants to schedule his interview for his affirmative asylum application, alleging that the delay in adjudicating his application has been unreasonable. (*Id.* ¶¶ 26, 33-34, 38). Plaintiff brings this action pursuant to both the Mandamus Act and the Administrative Procedure Act (the "APA"). (*Id.*).

Plaintiff submitted his affirmative asylum application to USCIS in March 2020. (Joint Appendix of Facts ("JAF"), Docket No. 37-2 ¶ 1). USCIS employs a system of scheduling asylum interviews which classifies applicants into three groups based on their relative priority as follows: (1) those applicants who are being rescheduled for previously scheduled interviews are given first priority; (2) the newest applicants whose applications are pending for twenty-one days or fewer are given second priority; and (3) the individuals in the "asylum backlog," beginning with the most recently added applicants, are given third priority. (*Id.* ¶ 2). This is typically referred to as the "Last In, First Out" ("LIFO") Policy. (*Id.* ¶ 5). LIFO was reinstated because, among other reasons, not all applicants would prefer to have their interviews scheduled sooner, rather than later. (*Id.*). Furthermore, LIFO has been effective in "stem[ming] the growth of [USCIS'] affirmative asylum backlog and identify[ing] non-meritorious asylum claims sooner[.]" (Joint Appendix of Evidence ("JAE"), Docket No. 37-1, Ex. 2, Decl. of Ashley Caudill-Mirillo in Supp. of Joint Mot. ("Caudill Mirillo Decl.") ¶¶ 24-25). Plaintiff's application falls into this third category of applicants. (*Id.* ¶ 6).

USCIS also utilizes a second track for scheduling asylum interviews, whereby some asylum officers are assigned to complete affirmative asylum applications from

the backlog, beginning with the oldest applications and working forward.[1] (*Id.* ¶ 3). Furthermore, in addition to these two parallel tracks, the Asylum Office Director retains "the discretion to schedule a case out of order, provided exceptional circumstances have been demonstrated[.]" (Radel Decl. ¶ 18). Such requests are necessarily reviewed on a "case-by-case basis." (*Id.*). Though Plaintiff evidently inquired about the possibility of having his case expedited, he never completed a request for expedited review. (*Id.* ¶ 22).

In general, agencies must conclude matters presented to them – including applications and petitions – within "a reasonable time," with consideration of the convenience and necessity of the parties. (JAF ¶ 10); *see* 5 U.S.C. § 555(b). None of USCIS' policies regarding interview scheduling for affirmative asylum applications, however, specify a time frame for when an interview might be scheduled. (*Id.* ¶¶ 4, 7). Nonetheless, Congress intended that, in the absence of exceptional circumstances, the initial interview must take place within 45 days of an applicant's filing an asylum application. (*Id.* ¶ 9); *see also* 8 U.S.C. § 1158(d)(5)(A)(ii).

While awaiting affirmative asylum application determinations, asylum seekers may secure an employment authorization document (an "EAD") in order to legally work in the United States. (Caudill Mirillo Decl. ¶ 9). Plaintiff was granted an EAD, valid through April 24, 2029. (Radel Decl. ¶ 24). Those awaiting affirmative asylum application determinations may also apply for advance parole to travel outside the United States.[2] (*Id.* ¶ 23). USCIS has no record of Plaintiff applying for advance parole to travel outside the United States while his application remains pending. (*Id.* ¶ 23).

---

[1] It is estimated that roughly 60% of applicants are scheduled pursuant to the second track. (JAE, Docket No. 37-1, Ex. 1, Decl. of David Radel in Supp. of Joint Mot. ("Radel Decl.") ¶ 16).
[2] Obtaining an advance parole document, however, does not guarantee the applicant's reentry, which will ultimately be decided at the airport or border by a U.S. Customs and Border Protection officer. (JAF ¶ 8).

### B. Procedural Background

Plaintiff filed his Complaint on April 22, 2024. (*See* Compl.). Plaintiff served Defendants on May 3, 2024. (Proof of Service, Docket No. 11). On June 28, 2024, Defendants filed a motion to dismiss (Mot. to Dismiss, Docket No. 14), which the Court denied. (Order re Mot. to Dismiss ("MTD Order"), Docket No. 20). On October 22, 2024, this case was transferred from Judge Gutierrez to Judge Hsu. (Order of Chief Judge, Docket No. 26). On April 4, Defendants and Plaintiff jointly moved for summary judgment. (*See* Joint Mot.).

## II. DISCUSSION

Before the Court is the Joint Motion. (*See* Joint Mot. at 1). The parties (the "Parties") submitted a Joint Appendix of Facts (*see* JAF) and a Joint Appendix of Evidence (*see* JAE), which the Court has reviewed. For the reasons explained herein, the Court **ORDERS** the case dismissed with prejudice for lack of subject matter jurisdiction and, accordingly, **DENIES** the Joint Motion as moot.

### A. Legal Standard

Federal courts are courts of "limited jurisdiction," possessing "only that power authorized by the Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); U.S. Const. art. III, § 2, cl. 1. District courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006). The Court "has an obligation to assess whether federal subject-matter jurisdiction exists and may do so *sua sponte* at any stage of the proceedings." *Grantor and Trustee of Trust with EIN#XX-XXXXXXX v. Woodward*, No. 8:24-cv-02206-ADS, 2024 WL 4505456, at *1 (C.D. Cal. Oct. 16, 2024). A district court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3).

**B.** **Analysis**

*1. The Court Lacks Mandamus Jurisdiction[3]*

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361. Because mandamus relief is "one of the most potent weapons in the judicial arsenal," certain conditions must be met to invoke it as a remedy. *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004); *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). Those conditions include: "'(1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.'" *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003) (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 n.5 (9th Cir. 1997)) (alteration in original). A failure to meet any of these conditions is treated as a jurisdictional defect. *See, e.g., Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (affirming district court's dismissal of petition for writ of mandamus due to lack of jurisdiction, as all three conditions were not met). Given the "extraordinary" nature of the remedy, even where the "test is met," a district court still "retains discretion to deny relief." *Johnson*, 349 F.3d at 1154. (quoting *R.T. Vanderbilt Co.*, 113 F.3d at 1065 n. 5).

Defendants argue that Plaintiff's relief under the Mandamus Act is unavailable because Plaintiff's claim is not "clear and certain." (Mot. at 15). The Court agrees with Defendants for the reasons explained below.

In this context, Courts have found that "the first prong of the mandamus test (that the claim is clear and certain) is not satisfied due to the preclusion of a private right of action to enforce the timelines expressed in § 1158(d)(5)(A)." *Shao v.*

---

[3] In the Court's prior ruling on Defendants' Motion to Dismiss ("MTD Order"), it analyzed the Mandamus Act claim coextensively with the APA claim. (MTD Order at 3). The Court elects to analyze the claims separately at this time.

5

1  *Mayorkas*, No. 2:23-cv-09639, 2024 WL 3361662, at *7 (C.D. Cal. Mar. 13, 2024);
2  *see also Mehrnoosh E. v. U.S. Citizenship and Immigr. Servs.*, No. SACV 23-1460-
3  KK-JDEx, 2024 WL 113613, at *4 (C.D. Cal. Jan. 16, 2024) ("[T]he language of
4  Section 1158(d)(7) makes clear the 45-day rule is not an enforceable right"); *Azeez v.*
5  *U.S. Dep't of Homeland Security*, No. CV 23-7507-KK-ASx, 2024 WL 1109289, at
6  *4 (C.D. Cal. Feb. 15, 2024) (expressing the same).  Furthermore, "the Ninth Circuit
7  has held identical language in another immigration statute forecloses mandamus
8  relief." *Azeez*, 2024 WL 1109289, at *4 (citing *Campos v. I.N.S.*, 62 F.3d 311, 313-14
9  (9th Cir. 1998), in which the Ninth Circuit held that the language in Section 225 that
10 prohibits a private right of action forecloses mandamus relief); *see also Yan v. Dir. Of*
11 *Los Angeles Asylum Off. For the U.S. Citizenship & Immigr. Servs.*, No. 2:22-cv-
12 05846-ODW, 2023 WL 4053410, at *5 (C.D. Cal. Jun. 16, 2023) (same).
13 Accordingly, because Plaintiff's claim is not clear and certain, the first condition of
14 the test is not met. *Shao*, 2024 WL 3361662, at *7; *Varol v. Radel*, 420 F.Supp.3d
15 1089, 1099 (S.D. Cal. 2019) (holding Plaintiff's claim to be not clear and certain
16 because Section 1158(d)(7) precludes private right of action); *Ghalil v. Radel*, No. 18-
17 cv-508, 2019 WL 1429583, at *4 (S.D. Cal. Mar. 29, 2019) (holding that Section
18 1558(d)(7) precluded mandamus relief for delay in asylum application adjudication).
19      Where Plaintiff fails to satisfy the first condition, possibility of mandamus relief
20 is foreclosed.  *Azeez*, 2024 WL 1109289, at *4; *Shao*, 2024 WL 3361662, at *7;
21 *Mehrnoosh E.*, 2024 WL 113613, at *4; *Varzaghani v. Mayorkas*, No. CV 23-1876-
22 DMG, 2024 WL 2952141, at *5 (C.D. Cal. Jun. 5, 2024) (dismissing where plaintiff
23 failed to satisfy third prong).  Dismissal for lack of jurisdiction "is appropriate" when
24 mandamus relief is unavailable as a matter of law. *Park v. U.S.*, No. EDCV 24-844-
25 KK-SPx, 2024 WL 3201660, at *1 (C.D. Cal. Jun. 27, 2024) (dismissing for lack of
26 subject matter jurisdiction where mandamus relief unavailable as a matter of law); *see*
27 *see also Hui Dong v. Cuccinelli*, No. CV 20-10030-CBM, 2021 WL 1214512, at *3
28 n.3 (C.D. Cal. Mar. 2, 2021) (emphasizing that "dismissal for failure to comply with

6

three threshold requirements of the Mandamus Act is jurisdictional"). The Court, accordingly, finds it lacks mandamus jurisdiction and dismisses Plaintiff's claim pursuant to the Mandamus Act.

### 2. *The Court Lacks Subject Matter Jurisdiction under the APA*

"[T]he APA does not provide an independent basis for subject matter jurisdiction in the district courts." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998); *see also Califano v. Sanders*, 430 U.S. 99, 105 (1977) ("[T]he APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions"). The APA, however, creates a limited cause of action, whereby federal sovereign immunity is waived when "a plaintiff 'suffering legal wrong because of agency action' seeks 'relief other than money damages.'" *Cooper v. Haase*, 750 Fed.Appx. 600, 601 (9th Cir. 2019) (quoting 5 U.S.C. § 702). In other words, a person "'adversely affected or aggrieved' by agency action . . . including a 'failure to act'" may be entitled to judicial review in certain circumstances. *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64, 63 n.1 (2004) (emphasis in original). Accordingly, the APA does *not* provide for judicial review of agency actions where either (1) such review is precluded by statute or (2) an agency is given, by law, discretion to conduct such action. *See* 5 U.S.C. § 701(a); *Heckler,* 470 U.S. at 830 ("[E]ven where Congress has not affirmatively precluded review [by statute], review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

Defendants contend that the Court lacks subject matter jurisdiction because the agency action at issue is committed to agency discretion by law. (Joint Mot. at 18). The Court agrees for the reasons explained herein.[4]

---

[4] The Court recognizes that this finding is inconsistent with the Court's prior ruling in its MTD Order. (MTD Order, Docket No. 32 at 5) (finding subject matter jurisdiction

The Court agrees that it lacks subject matter jurisdiction under the APA because the agency action at issue here is committed to agency discretion. *See* 5 U.S.C. § 701(a)(2) (prohibiting judicial review of "agency action…committed to agency discretion by law"). "[S]ome measure of discretion is involved in determining whether to adjudicate an asylum application" within the timeframes set forth in 1158(d)(5)(A). *Chen v. Radel*, No. SACV 16-1480-DOC, 2016 WL 11002594, at *3 (C.D. Cal. Nov. 21, 2016); *see also Alei*, 2016 WL 3024103, at *3 (holding that § 1158(d)(5)(A)(ii) "vests at least some degree of discretion in the agency to not set a

---

satisfied under the APA such that the Court denied Defendants' 12(b)(1) motion). Defendants correctly highlight, however, that "courts in this Circuit are split on whether inaction on asylum applications satisfies the *Norton* test permitting judicial review only where agency action is required by law." (Mot. at 18). Indeed, the case law reflects this split over the issue of a district court's subject matter jurisdiction under the APA in this context. *See, e.g., Yan*, 2023 WL 4053410, at *3 (concluding that the court retained jurisdiction to hear claims under the APA, despite the lack of private action to enforce time requirements set forth in Section 1158(d)(5)(A)); *see also Tailawal v. Mayorkas*, No. CV-22-01515-SPG-RAO, 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022) (same); *compare with Liuqing Zhu v. Cissna*, No. CV 18-9698 PA, 2019 WL 3064458, at *3 (C.D. Cal. Apr. 22, 2019) ("Based on § 1158(d)(7), district courts within the Central District have routinely held that asylum applicants lack a private right of action to enforce the timing requirements of § 1158(d)(5)(A).") (collecting cases); *Alei v. Holder*, No. 2:15-cv-08906-ODW, 2016 WL 3024103, at *3 (C.D. Cal. May 26, 2016) (holding that § 1158(d)(5)(A)(ii) "vests at least some degree of discretion in the agency to not set a hearing within 45 days, and thus is not the type of ministerial command that gives rise to a claim under § 706(a)"). This case was transferred from Judge Gutierrez to Judge Hsu, whose opinions on this issue of subject matter jurisdiction differ. The Court wishes to highlight that the "law of the case" doctrine "does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001); *see also U.S. v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) ("The law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction"). Rather, this discretionary doctrine is only applied "where an issue has been decided by a higher court or where the court has entered a final decree or judgment." *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F.Supp.3d 1088, 1095 (N.D. Cal. 20021) (citing *Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035, 1042-43 (9th Cir. 2018)). Where neither of those situations is presented here, the Court may freely reconsider its ruling in the prior, interlocutory order.

hearing within 45 days, and thus is not the type of ministerial command that gives rise to a claim under § 706(a)").

Accordingly, as the Court lacks subject matter jurisdiction, it must dismiss Plaintiff's claim.  Fed. R. Civ. P. 12(b)(1), (h)(3).  The Court, therefore, **ORDERS** the action dismissed in its entirety with prejudice for lack of subject matter jurisdiction.  The Joint Motion is **DENIED** as moot.[5]

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** the case dismissed with prejudice for lack of subject matter jurisdiction and, accordingly, **DENIES** the Joint Motion as moot.

**IT IS SO ORDERED.**

Dated:  May 9, 2025

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

---

[5] Defendants moved for summary judgment on the basis that USCIS' delay has not been unreasonable.  (Mot. at 19-29).  The Court need not reach that argument, however, given that dismissal is warranted on jurisdictional grounds.